UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING SALES PRACTICE AND PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates to All Plaintiffs Identified in Exhibits A, B, and C* | 3:19-md-02913 (WHO)<br><br>Hon. William H. Orrick |

**NOTICE OF JLI'S OMNIBUS MOTION TO DISMISS WITH
PREJUDICE NON-OPT OUT PLAINTIFFS' CLAIMS**

**PLEASE TAKE NOTICE** that on May 21, 2025, or as soon thereafter as this matter may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendant Juul Labs, Inc. ("JLI") will and hereby does move for the Court to dismiss with prejudice the claims of plaintiffs identified in Exhibits A, B, and C to JLI's Omnibus Motion to Dismiss With Prejudice Non-Opt Out Plaintiffs' Claims ("Motion"). The Motion is based on this Notice of Motion, the Motion itself, the Declaration of Timothy S. Danninger, dated April 14, 2025, and the Declaration of Morgan M. Meador, dated March 14, 2025.

Dated:  April 14, 2025

/s/ *Timothy S. Danninger*
Timothy S. Danninger (*pro hac vice*)
Florida Bar No. 95195
GUNSTER, YOAKLEY & STEWART, P.A.
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
Telephone: (904) 354-1980
Facsimile: (904) 354-2170
tdanninger@gunster.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2025, I electronically served the foregoing Motion on all counsel of record in this action using the CM/ECF system.

<u>/s/ *Timothy S. Danninger*</u>
Timothy S. Danninger

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING SALES PRACTICE AND PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates to All Plaintiffs Identified in Exhibits A, B, and C* | 3:19-md-02913 (WHO)<br><br>Hon. William H. Orrick |

**JLI'S OMNIBUS MOTION TO DISMISS WITH
PREJUDICE NON-OPT OUT PLAINTIFFS' CLAIMS**

On December 6, 2022, Juul Labs, Inc. ("JLI") and Plaintiffs' Lead Counsel ("PLC") announced a global settlement resolving claims against JLI and other released parties[1] in this MDL involving the design, manufacture, production, advertisement, marketing, distribution, sale, use, and performance of JUUL products ("claims") (ECF No. 3690). JLI and PLC executed Master Settlement Agreements with, inter alia, the Personal Injury Plaintiffs (the "Settlement Agreement") (ECF No. 3765). The Settlement Agreement established a voluntary program (the "Settlement Program") for the settlement of the claims of all "Personal Injury Plaintiffs" (as defined in the Settlement Agreement). This Court then entered Case Management Orders establishing the processes by which Personal Injury Plaintiffs would (1) register all claims eligible for resolution through the Settlement Program; (2) elect to participate in or opt out of the Settlement Program; and (3) either settle, release, and dismiss their claims or, in the case of opt-out Personal Injury Plaintiffs, participate in phased discovery and litigation ("Settlement Processes"). *See* Case Management Order ("CMO") Nos. 16 (ECF No. 3714) and 17 (ECF No. 4074).

---

[1] These released parties (the "JLI Settling Defendants") are Juul Labs, Inc., previously d/b/a Pax Labs, Inc., and Ploom Inc.; James Monsees; Adam Bowen; Nicholas Pritzker; Hoyoung Huh; Riaz Valani; Mother Murphy's Labs, Inc.; Alternative Ingredients, Inc.; Tobacco Technology, Inc.; Eliquitech, Inc.; McLane Company, Inc.; Eby-Brown Company, LLC; Core-Mark Holding Company, Inc.; Chevron Corporation; Circle K Stores Inc.; Speedway LLC; 7-Eleven, Inc.; Walmart; and Walgreens Boots Alliance, Inc.

1

Over the past two years, JLI, the JLI Settling Defendants, PLC, and settlement administrator BrownGreer PLC have diligently implemented the Settlement Agreement in accordance with the Court's orders. As of March 2025, more than 5,000 MDL Plaintiffs have settled, released, and voluntarily dismissed their claims against JLI and the JLI Settling Defendants.

JLI has identified 31 Personal Injury Plaintiffs who did not register their claims with BrownGreer, opt out of the Settlement Agreement as provided in CMO No. 16, or otherwise follow the Court-ordered Settlement Processes but whose claims have not been dismissed. JLI has also identified 90 Personal Injury Plaintiffs who settled their cases and signed releases but whose cases remain active. JLI therefore moves, pursuant to CMO Nos. 16 and 17 and this Court's inherent authority to oversee Settlement Processes, for an Order dismissing the claims of the 121 Personal Injury Plaintiffs listed on **Exhibits A, B**, and **C** with prejudice for failure to comply with the Court-ordered Settlement Processes set out in CMO Nos. 16 and 17.

JLI has conferred with Plaintiff's Leadership regarding this motion and, while Plaintiff's Leadership does not *per se* object to JLI's filing of this motion, Plaintiff's Leadership has represented that it defers to individual counsel for the plaintiffs identified in **Exhibits A, B,** and **C** to raise any specific objections. (Declaration of Timothy S. Danninger ("Danninger Dec.") ¶ 18).

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   The Court's Settlement Processes

The Court and the parties administered the Settlement Agreement and addressed post-settlement litigation in three phases. First, in CMO No. 16, the Court stayed all proceedings as to the JLI Settling Defendants and ordered counsel for all Personal Injury Plaintiffs to register all settlement-eligible claims. Second, having registered his or her claims, each Personal Injury Plaintiff elected to either participate in the settlement or formally opt out of it. Third, in CMO No. 17, the Court established discovery and litigation procedures for those Personal Injury Plaintiffs who registered their claims in the Settlement Program and then opted out of the settlement.

1.  *Eligible Plaintiffs & Case Management Order No. 16*

On December 16, 2022, this Court entered CMO No. 16 to facilitate initial Settlement Processes. (ECF No. 3714.) CMO No. 16 indefinitely stayed all proceedings "[e]xcept for the requirements and procedures described in [CMO No. 16] . . . as to the [JLI Settling] Defendants." *Id.* at Section VIII. CMO No. 16 also set out the procedures by which Personal Injury Plaintiffs were to enroll in the Settlement Program. And CMO No. 16 supplied procedures for dismissal of non-compliant Personal Injury Plaintiffs' claims. *See, e.g.*, *id.* at Section V (Plaintiff Fact Sheet deficiencies).

Tracking the Settlement Agreement's definition of Personal Injury Plaintiffs, CMO No. 16 defined settlement-eligible personal injury plaintiffs (hereafter "Personal Injury Plaintiffs") as:

> "**All individuals who personally, on behalf of another individual, or through an individual acting on their behalf have filed** or tolled **a tort claim or cause of action for personal injury against JLI as of December 13, 2022**, whether or not the claim or cause of action has been consolidated into MDL No. 2913 or JCCP No. 5052, consistent with the requirements of the Personal Injury Master Settlement Agreement."

*Id.* at Section IV (emphasis added).

CMO No. 16 did not require all Personal Injury Plaintiffs to participate in the Settlement Program—but it did require all Personal Injury Plaintiffs to comply with the processes set out in CMO No. 16. *See id.* at 1 ("The instructions herein are to be construed as the orders of this Court."). Thus, CMO No. 16 required all counsel of record for Personal Injury Plaintiffs in cases filed in the MDL to submit Counsel Certification Forms and "take such steps as are necessary to ensure that eligible claims, and all claims derivative thereof, are registered" with BrownGreer no later than December 23, 2022. *Id.* at Section IV. Although submission of a Counsel Certification Form "d[id] not obligate any Plaintiff to accept their offer[] under the[] Settlement Program," counsel who did not submit a Counsel Certification Form were required to confer with the PLC and the Parties' Special Master, Retired Judge Gail A. Andler, no later than January 15, 2023. *Id.*

CMO No. 16 next required Personal Injury Plaintiffs to submit completed and signed Plaintiff Fact Sheets on or before January 20, 2023. *Id.* at Section V. Section V of CMO No. 16 also set out a detailed

process by which JLI and the JLI Settling Defendants could move to dismiss with prejudice the claims of those Personal Injury Plaintiffs who failed to submit adequate Plaintiff Fact Sheets. *Id.*

At the same time, CMO No. 16 required counsel for Personal Injury Plaintiffs to send Informed Consent Letters to their clients on or before February 17, 2023, to "obtain informed consent to resolve their clients' claims through the relevant Settlement Program." *Id.* at Section VI. Again, nothing required Personal Injury Plaintiffs to accept their offers under the Settlement Program at this time, but "Personal Injury Plaintiffs whose counsel certif[ied] that they elect[ed] not to participate in the voluntary settlement program" were required to confer with the parties' Special Master, Retired Judge Gail A. Andler. *Id.* CMO No. 16 set a deadline of April 14, 2023, for these conferences (30 days before the deadline for Personal Injury Plaintiffs to opt out of the Settlement Program). *Id.*

At this point, CMO No. 16's Settlement Program enrollment processes were essentially complete. The Court would dismiss the claims of those eligible Personal Injury Plaintiffs with deficient Plaintiff Fact Sheets, and the remaining eligible Personal Injury Plaintiffs would enter the Settlement Program. Upon entry into the Settlement Program, eligible Personal Injury Plaintiffs could either elect to participate in the settlement ("Settling Plaintiffs") or formally opt out ("Opt Out Plaintiffs") in accordance with the terms of the Settlement Agreement. *See* Personal Injury Settlement Agreement ¶¶ 9.1, 9.3; *see also* CMO No. 17 at 1 (discussed *infra*). The Settlement Administrator identified Personal Injury Plaintiffs in the Settlement Program who failed to comply with its processes as "Non-Communicating Plaintiffs," and the Court dismissed these Personal Injury Plaintiffs' claims with prejudice pursuant to CMO No. 16. *See, e.g.*, Order Granting JLI's Motion To Dismiss With Prejudice Non-Communicating Plaintiffs' Claims (ECF No. 4074).

2. *Settling Plaintiffs' Obligations & The Settlement Agreement*

As discussed above, once a Personal Injury Plaintiff enrolled in the Settlement Program, the parties followed the Settlement Processes set out in the Settlement Agreement.[2]

---

[2] CMO No. 16 continued to control the progression of Settlement Processes by, for example, imposing certain deadlines upon the parties. *See, e.g.*, CMO No. 16 at Section VII. But the Settlement Agreement dictated how Personal Injury Plaintiffs should (1) accept settlement, (2) submit releases, (3) receive

The Settlement Agreement required Settling Plaintiffs to "submit a Settlement Program Eligible Plaintiff Participation Form, including Release and Confidentiality Form to indicate whether they ha[d] chosen to receive a settlement offer through the Settlement Program" by May 15, 2023. Settlement Agreement. ¶ 9.1. A Settling Plaintiff's Release took effect immediately upon payment of the Initial Personal Injury Settlement Amount into the Personal Injury Trust Account. *Id.* ¶ 10.2. Once effective, the Release "release[d] any and all claims [Settling Plaintiff] . . . ha[s], or may have in the future, against the [JLI Settling Defendants] concerning and/or connected with JUUL Products and/or with any injury [Settling Plaintiff] . . . ha[s] ever claimed, or may at any time in the future claim, the [JLI Settling Defendants] caused in whole or in part concerning and/or connected with JUUL Products." *Id.* Exhibit 1 (Personal Injury Release of All Claims). Consistent with the terms of the Release, the Settlement Agreement required Settling Plaintiffs to dismiss their claims against JLI Settling Defendants with prejudice within 15 business days of the JLI Settling Defendants' payment of the Initial Personal Injury Settlement Amount into the Personal Injury Trust Account. *Id.* ¶ 10.2.

### 3. *Personal Injury Opt Outs & CMO No. 17*

The Settlement Agreement required counsel for each eligible Personal Injury Plaintiff who did not submit a Settlement Program Eligible Plaintiff Participation Form by May 15, 2023, to "provide Certification for Personal Injury Opt-Outs and produce a list of all Non-Communicating Plaintiffs." *Id.* ¶ 9.1. The Settlement Agreement likewise required BrownGreer to provide to PLC and JLI a list of all Opt Out and Non-Communicating Plaintiffs by June 1, 2023. *Id.* ¶ 9.3. Any Opt Out Plaintiffs were thereafter required to meet, via Zoom or in person, with their counsel and the Special Master no later than August 1, 2023, "to address their reasons for declining to Participate [in the Settlement Program] and have any open questions addressed by the Special Master." *Id*. After certifying their opt-out status, Opt Out Plaintiffs became subject to the discovery procedures and protocols outlined by this Court's CMO No. 17.

---

payment, and (4) dismiss their claims. *See, e.g.*, Settlement Agreement ¶ 9.1 (submission of release); ¶ 10.2 (payment of settlement funds and dismissal of claims).

On January 30, 2023, this Court entered CMO No. 17 "to efficiently manage any cases against [JLI] Settling Defendants." While CMO No. 16 had affirmed this Court's authority to oversee Settlement Processes, CMO No. 17 affirmed this Court's authority over opt-out litigation. A subset of CMO No. 17's opt-out litigation discovery processes are relevant here.

First, CMO No. 17 applies only to (1) "individuals . . . alleging claim(s) of any nature against . . . [JLI and the JLI Settling Defendants] . . . **who have elected not to participate in the Settlement Programs as outlined in the Settlement Agreements** entered between Plaintiffs' Lead Counsel and JLI on December 6, 2022" and (2) "all individuals . . . alleging claim(s) of any nature against [JLI] Settling Defendants **that are newly filed in or removed to this MDL on or after [December 13, 2022]**." CMO No. 17 at 1.

Second, "Plaintiffs who fail to fully comply with the requirements of [CMO No. 17] may be subject to sanctions and dismissal of their claims pursuant to Federal Rule of Civil Procedure 37." *Id.* at Section IX.

**B.   Certain Personal Injury Plaintiffs Failed to Comply With Mandatory Settlement Processes, And This Court Should Dismiss Their Claims With Prejudice.**

1.   *Failure to Comply with CMO No. 16*

The Personal Injury Plaintiffs identified in **Exhibit A** ("Exhibit A Plaintiffs") to this motion failed to comply with CMO No. 16 at the earliest stage—their counsel did not list them on the Counsel Certification Forms that CMO No. 16 required of *all* Personal Injury Plaintiffs who had filed their claims in the MDL on or before December 13, 2022, irrespective of whether they intended to participate in the settlement or not, and, as a result, BrownGreer did not register or track these Exhibit A Plaintiffs as the parties worked through the agreed Settlement Processes. *See* CMO No. 16 at Section IV.

All Exhibit A Plaintiffs filed all of their claims in the MDL on or before December 13, 2022. (Danninger Dec ¶ 2.) Thus, CMO No. 16 required all Exhibit A Plaintiffs to comply with CMO No. 16's Settlement Processes. (Danninger Dec. ¶ 3); CMO No. 16 at Section IV.

1 | Counsel for Personal Injury Plaintiffs timely submitted Counsel Certification Forms to BrownGreer on or before December 23, 2022. (Declaration of Morgan M. Meador ("Meador Dec.") ¶ 6.) Each Counsel Certification Form included, as Exhibit 1, a true and complete list—or what was supposed to be a complete list—of all Personal Injury Plaintiffs represented by the submitting law firm. (Meador Dec. ¶ 7.) On January 20, 2023, BrownGreer provided the parties a 12,088-row Excel spreadsheet in which it had aggregated all Personal Injury Plaintiffs who had been identified in Exhibit(s) 1 to the Counsel Certification Forms that each firm representing Personal Injury Plaintiffs had submitted to BrownGreer. (Meador Aff. ¶ 8.) This spreadsheet was the core document upon which the parties and BrownGreer were to rely in administering the settlement, e.g., tracking compliance with Settlement Processes, tracking Non-Communicating Plaintiffs, and tracking submission of Releases. (Danninger Dec. ¶ 5.)

Exhibit A Plaintiffs were not included in the Excel spreadsheet BrownGreer provided to the parties on January 20, 2023. (Meador Aff. ¶ 9.) Exhibit A Plaintiffs were not included in the spreadsheet because their counsel had failed to identify them on Exhibit 1 of any Counsel Certification Form in violation of CMO No. 16. (Meador Aff. ¶ 10.)

Having omitted Exhibit A Plaintiffs from their Counsel Certification Forms counsel for Exhibit A Plaintiffs should have conferred with the PLC and the parties' Special Master, Retired Judge Gail A. Andler, about Exhibit A Plaintiffs on or before January 15, 2023, as required by CMO No. 16. (Danninger Dec. ¶ 7.) Upon information and belief, they did not. *Id.*

And, while some Exhibit A Plaintiffs submitted Plaintiff Fact Sheets, upon information and belief, no counsel for any Exhibit A Plaintiff certified that his or her client had elected not to participate in the settlement following receipt of Informed Consent Letters or conferred with Judge Andler by April 14, 2023, as CMO No. 16 required. (Danninger Dec. ¶ 8.) Therefore, Exhibit A Plaintiffs never entered the Settlement Program—they did not settle with JLI and the JLI Settling Defendants, they did not opt out of the Settlement Agreement, and they were not reported by counsel to be Non-Communicating Plaintiffs under the terms of the Settlement Agreement. (Danninger Dec. ¶ 9–10.)

Exhibit A Plaintiffs are therefore neither Settling Plaintiffs nor Opt Out Plaintiffs. Even if Exhibit A Plaintiffs had wished to decline to participate in the Settlement Program, they failed to register with BrownGreer and enroll in the Settlement Program—which was a condition precedent to validly opting out. *See* Sections A.1 & A.3, *supra*. Since Exhibit A Plaintiffs and their counsel repeatedly failed to comply with CMO No. 16's threshold requirements, the Court should dismiss these plaintiffs' claims.

2. *Failure to Comply with the Settlement Agreement*

JLI Settling Defendants made payment of the Initial Personal Injury Settlement Amount on October 27, 2023. (Danninger Dec. ¶ 11.) The Settlement Agreement therefore required Settling Plaintiffs to dismiss their claims no later than November 17, 2023. (Danninger Dec. ¶ 12.) The Settling Plaintiffs identified in **Exhibits B** and **C** to this motion settled their cases, executed Releases, and therefore, pursuant to the terms of the Settlement Agreement, released any and all claims they have or may have in the future against JLI and the JLI Settling Defendants. (Danninger Dec. ¶ 13.)[3] The Settlement Agreement required these Settling Plaintiffs to dismiss their claims against JLI and the JLI Settling Defendants with prejudice on or before November 17, 2023. (Danninger Dec. ¶ 15.)

As of April 14, 2025, the Settling Plaintiffs identified in **Exhibit B** to this motion have failed to properly dismiss their claims against JLI and the JLI Settling Defendants. (Danninger Dec. ¶ 16.) Although some of these Settling Plaintiffs previously were minors who could not dismiss their claims[4], all Settling Plaintiffs identified in **Exhibit B** have reached the age of the majority, have executed Releases, and have failed to satisfy their now-ripe obligation to dismiss their claims. (Danninger Dec. ¶ 17.)

As of April 14, 2025, the Settling Plaintiffs identified in **Exhibit C** to this motion have failed to properly dismiss their claims against JLI and the JLI Settling Defendants. (Danninger Dec. ¶ 16.) Each

---

[3] JLI has reviewed and is in possession of the Releases of all 90 Plaintiffs identified in **Exhibits B** and **C**. (Danninger Dec. ¶ 13.) JLI will provide these Releases upon the Court's request.

[4] Minor plaintiffs cannot receive payments until Minor's Compromise processes are complete. Minor plaintiffs' dismissals are held in abeyance until these processes are complete and plaintiffs receive payment. The Settling Plaintiffs identified in **Exhibit B** have reached the age of majority and, accordingly, the duty to dismiss their claims with prejudice ripened upon Plaintiffs' reaching the age of majority (to the extent they were not adults already).

of these Settling Plaintiffs had at least two causes of action against JLI and the JLI Settling Defendants pending in either the MDL or JCCP. (Danninger Dec. ¶ 14.) And each of these Settling Plaintiffs dismissed one of his or her causes of action against JLI and the JLI Settling Plaintiffs, as contemplated by the Settlement Agreement, but failed to dismiss the others, which remain pending against JLI and the JLI Settling Defendants. (Danninger Dec. ¶ 16.) The Settling Plaintiffs identified in **Exhibit C** are of the age of majority[5] and it is past time to dismiss their remaining claims. (Danninger Dec. ¶ 17.)

### C. Relief

This Court has authority to enter Orders to facilitate settlement. Fed. R. Civ. P. 16(a)(5), (d); *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 12773589, at *1 (N.D. Cal. Dec. 12, 2014). The plaintiffs identified in **Exhibits A, B,** and **C** have failed to comply with this Court's orders (Exhibit A Plaintiffs) or, in the alternative, have failed to comply with the terms of the Settlement Agreement (Exhibits B and C Plaintiffs).

The Court should dismiss Exhibit A Plaintiffs' claims with prejudice. CMO No. 16 was designed to provide a process for those plaintiffs wanting to accept the settlement, a process for those plaintiffs wanting to reject the settlement and opt out, and a process for dismissing with prejudice the claims of those plaintiffs who failed to comply with CMO No. 16 and Settlement Processes. Exhibit A Plaintiffs failed to register their claims as the Court ordered. Dismissing Exhibit A Plaintiffs' claims—which they have failed to settle or pursue—and closing their cases is therefore appropriate. *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) (MDL court has discretion to dismiss plaintiffs' claims for failure to comply with CMO.).

The Court should also dismiss the claims of the Settling Plaintiffs identified in Exhibits B and C to this motion. These Settling Plaintiffs have executed irrevocable Releases releasing all claims against JLI and the JLI Settling Defendants and are bound to the terms of the Settlement Agreement under basic principles of contract law. *See Knudsen v. Comm'r of Internal Revenue*, 793 F.3d 1030, 1034 (9th Cir.

---

[5] The Settling Plaintiffs identified in **Exhibit C** have reached the age of majority. The duty to dismiss their claims with prejudice ripened upon each Plaintiff reaching the age of majority (to the extent they were not adults already).

9

2015) (citation omitted) ("'A settlement is a contract, and its enforceability is governed by familiar principles of contract law.'"). The Settlement Agreement and their Releases required these Settling Plaintiffs to dismiss their claims no later than November 17, 2023. They have not done so. The Court should dismiss these Settling Plaintiffs' claims with prejudice.

### D.     Conclusion

For the foregoing reasons, JLI respectfully requests this Court dismiss with prejudice the claims of plaintiffs identified in **Exhibits A, B,** and **C,** and close their cases in full.[6]

**Dated:** April 14, 2025

/s/ *Timothy S. Danninger*
Timothy S. Danninger (*pro hac vice*)
Florida Bar No. 95195
GUNSTER, YOAKLEY & STEWART, P.A.
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
Telephone: (904) 354-1980
Facsimile: (904) 354-2170
tdanninger@gunster.com

---

[6] JLI acknowledges that some of the cases for the plaintiffs subject to this motion have been administratively closed, following plaintiffs' dismissal of their claims against the Altria defendants pursuant to Altria's separate settlement agreement. These plaintiffs are distinguished with an "*" in the Exhibits to this motion. Despite the administrative closure, these plaintiffs never formally dismissed their claims against JLI. JLI respectfully requests that the Court grant the requested relief and ensure that plaintiffs' claims against JLI are dismissed in full.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2025, I electronically served the foregoing Motion on all counsel of record in this action using the CM/ECF system.

/s/ *Timothy S. Danninger*
Timothy S. Danninger

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28